Larry EASON, Plaintiff,

v.

Janet NICHOLAS, Billie L. Johnson, Jon Heckel, William D. O'Sullivan, Defendants.

No. 93–3072.

United States District Court, C.D. Illinois, Springfield Division.

Feb. 17, 1994.

Larry Eason, pro se.

Wendell D. Hayes, Asst. Atty. Gen., Springfield, IL, for defendants.

## OPINION

EVANS, United States Magistrate Judge.

The plaintiff, a state prisoner, has brought this civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, various Western Illinois Correctional Center officials, violated the plaintiff's constitutional rights by depriving him of access to the courts. The parties have consented to have this case heard to judgment before a U.S. Magistrate Judge pursuant to 28 U.S.C. 636(c). This matter is before the court for consideration of the parties' cross-motions for summary judgment. For the reasons stated in this order, judgment will be granted in favor of the defendants.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "Where the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359 (7th Cir.1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker,* 957 F.2d 506, 507–08 (7th Cir.1992).

### FACTS

The plaintiff is a state prisoner, currently confined at the Stateville Correctional Center. At the time of the events giving rise to this lawsuit (from February or March, 1992, through April 28, 1993), the plaintiff was incarcerated at the Western Illinois Correctional Center [hereinafter, "W.I.C.C."]. The defendants Janet Nicholas and Billie Johnson are W.I.C.C. law librarians. The defendants William O'Sullivan and Jon Heckel are, respectively, the prison's warden and assistant warden.

The following facts are uncontested: Between February 5, 1993, through April 19, 1993, the plaintiff attended W.I.C.C.'s law library at least 103 times. In addition, the plaintiff was given special call passes to use the library on off-hours, including weekends and holidays. [Institution policy bars use of the library during certain hours unless inmates have imminent filing or court dates and consent from their supervisor.] In addition to using the library nearly every morning, the plaintiff was granted special permission to go to the library after he completed his daily work.

During his stay at W.I.C.C., the plaintiff was provided some 4,119 copies at state expense. In addition, the plaintiff was furnished with free notary services, writing materials, business-size envelopes and large manila envelopes. The plaintiff was allowed to use the envelopes only for legal mail; to ensure compliance, the plaintiff was required to address his mail at the circulation desk.

The State advanced postage for the plaintiff's legal mail; as of the date of filing of the lawsuit, the plaintiff owed W.I.C.C. $69.18 for mail costs.

Prior to the plaintiff's transfer to W.I.C.C., the institution had no set policy regarding the dispensing of writing materials. Shortly after his arrival, the plaintiff expressed dissatisfaction with the library services provided and amount of paper received. Because the plaintiff protested the lack of a formal rule, W.I.C.C. officials developed a policy [three sheets of typing paper per session (more on a case-by-case basis) and one pencil per session], in line with other institutions. When the plaintiff continued to complain that he was not being given enough paper, the policy was changed to five sheets per session.[1]

While in the law library, the plaintiff frequently was observed working on the cases of other inmates (whom he referred to as his "clients,") or simply talking. The plaintiff currently is litigating no less than fifteen of his own cases.[2] According to the affidavit of librarian Jon Heckel, W.I.C.C. "is in compliance with the mandates of the Illinois Department of Corrections regarding Law Library procedures and services."

### DISCUSSION

■ No material facts are in dispute, and the court concludes that the defendants are entitled to judgment as a matter of law. No reasonable person could find that the defendants impermissibly infringed on the plaintiff's right of access to the courts. To the contrary, the record shows that the defendants went to great lengths to accommodate the plaintiff's legal needs. The plaintiff's lawsuit is completely groundless.

■ There is no dispute that the Constitution guarantees prison inmates a right to meaningful access to the courts. *Bounds v.*

---

1. The plaintiff contends that on some occasions, the defendants refused to give him any typing paper at all. The defendants flatly deny the charge; however, for purposes of this motion, the court will accept the plaintiff's allegation as true.

2. In fact, the court's docketing system indicates that the plaintiff has litigated twelve cases in the U.S. District Courts for the Central District of Illinois alone (under his various aliases) since 1989, when the court implemented its computer case tracking program.

*Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). That fundamental right requires prison authorities "to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498.

■ Nevertheless, prison officials may "reasonably" regulate the time, place, and manner in which library facilities are utilized. *Isaac v. Jones,* 529 F.Supp. 175, 178 (N.D.Ill. 1981); *see also, Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 858 (9th Cir. 1985). "The constitutionally relevant benchmark is *meaningful,* not total or unlimited access." *Caldwell v. Miller,* 790 F.2d 589, 606 (7th Cir.1986), *citing Bounds,* 430 U.S. at 823, 97 S.Ct. at 1495. Even "highly restrictive" procedures do not violate constitutional mandates if inmates still have "meaningful access" to the courts. *Hossman v. Spradlin,* 812 F.2d 1019, 1021 (7th Cir.1987).

Here, the plaintiff does not appear to dispute that he had adequate access to the law library, and the record certainly would support such a finding. The plaintiff used the library at W.I.C.C. on a nearly daily basis.

■ The plaintiff nevertheless contends that the defendants intentionally deprived him of needed legal supplies. However, no reasonable person could agree. The right of access to the courts necessarily entitles the prisoner to envelopes and stamps in order to correspond with the courts and legislature. *Bounds v. Smith,* 430 U.S. 817, 824–25, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977). But inmates do not have a right to unlimited free supplies. *See, e.g., Gaines v. Lane,* 790 F.2d 1299, 1308 (7th Cir.1986), *citing Bach v. Coughlin,* 508 F.2d 303, 307 (7th Cir.1974). Rather, prison authorities are permitted to make a "reasonable attempt to balance the right of [access to the courts] with prison budgetary concerns." *Bach,* 508 F.2d at 307–08; *Gaines,* 790 F.2d at 1308.

The defendants' unrefuted affidavits and the prison's accounting records show that the plaintiff was provided unlimited scratch paper, small amounts of typing paper every library session upon request,[3] and pencils; furthermore, six manual and electric typewriters were available in the library.[4] Even if the defendants did, on occasion, deny the plaintiff typing paper, their actions did not deprive him of meaningful access to the courts. Though not sufficient to satisfy him, the plaintiff was afforded ample (and constitutionally adequate) legal resources.

The prison's processing of the plaintiff's legal mail likewise passes constitutional muster. Departmental regulations provide:

> Committed persons shall be permitted to mail at State expense the equivalent of three one-ounce, first-class letters to the continental United States each week. This allowance may not be transferred from one committed person to another, nor may it accumulate from one week to another.

> Committed persons shall be permitted to send additional letters if they have sufficient funds in their trust fund accounts and attach signed money vouchers to cover the postage. Committed persons with insufficient money in their trust fund accounts shall be permitted to send reasonable amounts of legal mail [in addition to the three first class, one-ounce, state-paid letters each week] ... at State expense if they attach signed money vouchers authorizing deductions of future funds to cover the cost of the postage.

Ill.Admin.Code, tit. 20, § 525.130(a), (b) (1992). Pursuant to this rule, prison officials require indigent[5] inmates to submit a money voucher when they post legal mail deemed to exceed "reasonable" limits; the costs are later deducted if and when the inmate receives money into his account. The Seventh Circuit has upheld such regulations; likewise, other courts have sanctioned more stringent provi-

---

**3.** With certain exceptions; *see* Footnote 1.

**4.** Inmates were required to buy their own ribbons (available from the commissary) for the electric typewriters.

**5.** The plaintiff refused to execute a power of attorney for the prison to open a trust fund account. The plaintiff therefore had to fill out and sign an indigent form every time he requested free library services. ·

sions. *See, for example, Hoppins v. Wallace,* 751 F.2d 1161 (11th Cir.1985).

There is no suggestion that the defendants ever refused to post the plaintiff's outgoing legal mail. Rather, they simply required the plaintiff to complete forms authorizing later reimbursement to the State for the legal costs incurred. The alternative—refusal to mail "unreasonable" amounts of legal mail—would obstruct indigent inmates from using the courts. The prisons simply advance the money for indigent inmates and later recover the money if and when the inmate later has funds available. The deferred deduction of legal costs advanced by the State did not violate the Constitution.

 Even assuming (without finding) that the defendants did attempt to interfere with the plaintiff's access to the courts, the plaintiff has shown no prejudice. *See Shango v. Jurich,* 965 F.2d 289 (7th Cir.1992). An allegation of actual or threatened detriment is an essential element of a § 1983 action for denial of access to the courts. *Martin v. Davies,* 917 F.2d 336, 340 (7th Cir.1990), *cert. denied,* 501 U.S. 1208, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991). A complaint is inadequate if it "offers no specific facts to support these allegations—no court dates missed; no inability to make timely filings; no denial of legal assistance to which he was entitled; and no loss of a case which could have been won." *Id.*

The plaintiff vaguely states that because he was denied typing paper, he was prevented from filing a timely petition for a writ of certiorari to the U.S. Supreme Court and a timely jurisdictional statement in a case pending before the Seventh Circuit Court of Appeals. Brushing aside the lack of credibility of the plaintiff's assertion, his contention still is without merit.

Supreme Court Rule 13.1 allows a party to file a petition for a writ of certiorari within ninety days after the Court of Appeals enters judgment. A Justice may extend the time an additional sixty days for good cause shown. *See* Supreme Court Rule 13.2. In light of the voluminous documentation showing court access, as well as the plaintiff's prolific litigation during the time period in question, the plaintiff cannot fairly maintain that the pur-

portedly "severe restrictions" at W.I.C.C. impeded his ability to file a timely petition for five entire months. The court further questions why the plaintiff did not simply use scratch paper, which he does not dispute was available in abundant supply, to draft his petition, or at least a motion for an extension of time to file the petition.

The brief delay in filing a jurisdictional statement in support of his appeal likewise did not amount to "prejudice." The Court of Appeals simply issued an order directing the plaintiff to file the jurisdictional statement, and the plaintiff admits that he was able to do so, although belatedly. The plaintiff's appeal was not "hampered," as he maintains. Regardless as to whether the defendants' actions policies somewhat impeded access to the courts, the plaintiff's conclusory allegations of prejudice are insufficient to defeat summary judgment.

 Finally, the court finds the plaintiff's implicit Eighth Amendment argument unpersuasive. The plaintiff maintains that he was forced to choose between forgoing lawsuits or doing without articles of hygiene. However, a prison inmate is not destitute. His basic necessities of food, shelter, clothing, and medical care are furnished by the state. A prisoner, like any other person contemplating a civil suit, must consider the cost of litigation versus the probability of success. If a plaintiff's lawsuit has merit, then presumably he will recover any expenses incurred in prosecuting his case.

This case is easily distinguishable from *Gluth v. Kangas,* 951 F.2d 1504 (9th Cir. 1991), where the plaintiff allegedly had to choose between daily necessities and essential legal supplies. Here, the defendants provided for both the plaintiff's basic needs and his legal needs. The defendants were under no obligation to fund, without restraint, the plaintiff's recreational litigation and jailhouse lawyering.

 Additionally, prisons are not required to provide the amenities found in hotels, *see Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); a lack of toiletries does not amount to "cruel and unusual" conditions

of confinement. *Id.* at 1235–36. Furthermore, this court is aware that prisons provide "indigent bags" containing toothbrushes, deodorant and other basic hygienic supplies to needy inmates.

In sum, the court finds that no outcome-determinative facts are in dispute, and concludes that the defendants are entitled to judgment as a matter of law. The plaintiff, a prolific litigator, was provided ample legal materials and extensive library time while confined at the Western Illinois Correctional Center. No reasonable person could find that the defendants denied the plaintiff meaningful access to the courts. This lawsuit is entirely groundless, and sanctionably so.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment (docket # 31) is denied.

IT IS FURTHER ORDERED that the defendants' motions for summary judgment (docket numbers 23 and 24) are allowed. The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed.R.Civ.P. 56. The case is terminated. The parties are to bear their own costs.