**Purcell BRONSON, Petitioner,**

v.

**Martin F. HORN, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 18, 2003.

Decided Aug. 26, 2003.

Purcell Bronson, petitioner, pro se.

William E. Fairall, Jr., Camp Hill, for respondent.

BEFORE: FRIEDMAN, Judge, COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN.

Before the Court, in our original jurisdiction, is a motion for summary judgment filed by Commissioner Martin F. Horn, former Commissioner of the Pennsylvania Department of Corrections (Department). This case had its genesis in December of 1997, when inmate Purcell Bronson filed a lawsuit addressed to this Court's original jurisdiction, in which he challenged Administrative Directive No. 7.13.1–2. Issued by Horn, the Administrative Directive limited to $10.00 a month the amount that the Department would place in an inmate account for legal mailings. Previously, this amount was $40.00 per month. Bronson averred that the directive makes no allowances for court-imposed deadlines and that it was issued with "the express intention of obstructing, interfering with, and denying him access to the courts." (Petition for Review, ¶ 7.) He further averred that it was aimed at, and singled out, "[j]ailhouse [l]awyer[s]." (*Id.*, ¶ 8.) He claimed, generally, that, as a result of this directive, he has been denied access to the United States Supreme Court, the Pennsylvania Supreme Court and the Pennsylvania Superior Court. Further, he maintained that, due to the directive, he suffered "delayed access to the courts" and adverse decisions because he had been unable to respond to court orders and deadlines. (*Id.*, ¶ 10.) Additionally, he asserted that he has been penalized by prison officials for receiving legal assistance when other inmates have mailed documents out for

him. Finally, he stated that the directive also precludes debiting an account for copying fees for items that cannot be hand-copied. As relief, he sought a declaratory judgment that the policy, as applied and on its face, is unlawful because it deprives him of access to the courts, in violation of the First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983. As a separate count, he challenged the action of A. Scott Williamson, Deputy Superintendent for Centralized Services, for withholding his "idle pay."

This case took a detour when Horn removed the matter to federal court because it involved a federal question. However, it was remanded back to us after the court granted Horn's motion to dismiss on the basis that, under 42 U.S.C. § 1983, Bronson had to exhaust his administrative remedies (in this case, allegedly DOC's internal grievance procedure), and that he had not done so.[1]

When the matter was returned to this Court, Horn filed preliminary objections to the amended Petition for Review alleging that Bronson had set forth no claim under any state law.[2] We overruled the preliminary objections because, although the petition had not set forth "a single paragraph specifying a state law that [Horn] allegedly violated," the question was "whether Pennsylvania procedural law recognizes an action for equitable and declaratory relief, separate and apart from § 1983, to challenge the validity of a statute, regulation

or other governmental policy on federal constitutional grounds." *Bronson v. Horn*, (Pa.Cmwlth., No. 1025 M.D.1997, filed May 1, 2000), slip op. at 2–3 (footnote omitted). We concluded that such an action could be brought under either the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7551, or our equity jurisdiction. The parties then engaged in discovery and, ultimately, Horn filed the presently pending motion.[3]

A motion for summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa. R.C.P. No. 1035.2; *Shoats v. Pennsylvania Department of Corrections*, 139 Pa. Cmwlth. 607, 591 A.2d 326 (1991). The right to judgment must be clear and free from doubt. *Shoats.* "Summary judgment is appropriate in an action where the parties are seeking declaratory relief." *Unisys Corporation v. Pennsylvania Life and Health Insurance Guaranty Association*, 667 A.2d 1199, 1201 (Pa.Cmwlth. 1995), *affirmed per curiam*, 546 Pa. 256, 684 A.2d 546 (1996). The issue here is whether the administrative directive limiting the account funds the Department makes available to Bronson for legal mailings, violated Bronson's access to the courts under federal law.

■ We begin with the principal that inmates have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52

---

1. *Bronson v. Horn*, No. 98–CV–43 (M.D.Pa. 1998).

2. When the case was remanded to this Court, any arguments regarding failure to exhaust administrative remedies appear to have been dropped.

3. The Department argues that we should dismiss this case as moot because (1) Horn is no longer the Commissioner of Corrections and

(2) Bronson is now in a different state prison. We decline to dismiss because the policy remains and is being enforced, albeit under the authority of a different Commissioner (now Secretary) of Corrections, and because the rules provide for automatic substitution when a government official leaves office. *See* Pa. R.A.P. 503(c). Further, the policy has statewide application; therefore, which state institution Bronson is currently being housed is irrelevant.

L.Ed.2d 72 (1977). The United States Supreme Court has interpreted this to mean that prison authorities are "to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* However, prison officials do not have to adopt every practice that would aid incarcerated individuals, *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), but, rather, officials need only provide inmates with those tools that are needed to attack an inmate's sentence or his conditions of confinement. *Id.* In this case, the parties appear to agree that Bronson's legal filings, subject to the $10.00 limitation, are challenging conditions of confinement, a factor we keep in mind as we review the policy.

■ The United States Supreme Court generally defers to the judgment of prison officials in upholding regulations against constitutional challenge, because the problems of American prisons are complex and intractable ones with which the courts are ill equipped to deal. *Shaw v. Murphy,* 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). Accordingly, it employs a "unitary, deferential standard" in reviewing prisoners' constitutional claims. *Id.* "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). In *Shaw,* the Court set forth four factors that should be considered:

First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." ... If the connection between the regulation and the asserted goal is "arbitrary or irrational,"

then the regulation fails, irrespective of whether the other factors tilt in its favor. . . . In addition, courts should consider three other factors: the existence of "alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and "the absence of ready alternatives" available to the prison for achieving the governmental objectives.

*Id.* at 229–230, 121 S.Ct. 1475 (citations omitted).

■ We, therefore, apply the *Shaw* factors to the case at bar. The Department's stated reason for the administrative directive is that it allows it to continue to provide inmates with access to the courts, while taking into consideration: (1) the need for consistent application of the policy and practices throughout the state's correctional institutions; and (2) the Department's fiscal responsibility to the taxpayers of the Commonwealth of Pennsylvania. (Respondents' Response to Petitioners First Set of Interrogatories, Question 1.) This statement is nowhere rebutted by Bronson in any affidavit or other evidentiary submission. We hold that this evidence establishes a rational connection between the regulation and a legitimate neutral governmental interest. It does so because it permits court access, limits the funds advanced equally for each indigent inmate, and holds a line on taxpayer monies employed for this purpose.

■ We now turn to prong two of *Shaw,* whether inmates' have alternative means of exercising their right of access to the courts. We note, initially, that the Department cannot, constitutionally, totally prohibit legal filings. Nonetheless, an inmate does not have the right to unlimited free

postage, *Twyman v. Crisp*, 584 F.2d 352 (10th Cir.1978), or free or unlimited access to photocopying, *Harrell v. Keohane*, 621 F.2d 1059 (10th Cir.1980); *Johnston v. Lehman*, 148 Pa.Cmwlth. 98, 609 A.2d 880 (1992). Thus, in our view, the option to place a *neutral* restriction, such as a dollar limitation, on the costs to be advanced by the Department for those filings is a permissible one. In fact, such a system allows the **inmate,** not the Department, to choose which cases to bring and which to forgo. Therefore, the policy does not arbitrarily act to prevent the filing of claims pertaining to the challenge of the underlying criminal sentence or the conditions of confinement. The alternative for indigent inmates who wish to exercise their constitutional right to access the courts is to prioritize their legal filings. This is no more than is expected of all litigants, incarcerated or not, who must consider the fiscal implications of various litigation costs and strategies. For example, when an indigent inmate has insufficient funds, the inmate can shift costs to the following month when he or she will have more funds by requesting, for that reason, an extension of time for filing documents. The inmate can also reduce costs by seeking leave to file fewer copies of documents, and in extreme cases a court could, where warranted, order the Department to permit additional photocopying or mailing. Although Bronson seems to be arguing that the $10 limit is insufficient per se, he has not presented any evidence to support that position and, in fact, a $7.70 per month limitation has been upheld by the Eighth Circuit. *See Blaise v. Fenn*, 48 F.3d 337 (8th Cir.1995) (limitation upheld

because there was an available institutional procedure for requesting an increase).

■ The third factor under *Shaw* is an inquiry of the impact of the policy on, *inter alia*, inmates and the allocation of prison resources. Bronson suggests, and is no doubt correct, that the effect of this policy will be to curtail the activities of certain "jailhouse lawyers." However, the Supreme Court held in *Shaw* that there is no constitutional right to a jailhouse lawyer. Thus, even if Bronson's allegation is true, it does not mean that the policy must be stricken. Moreover, the Department persuasively argues that because the money being advanced for inmate legal mailings is coming from its own budget,[4] it must, as a result, curtail the amounts available for other important programs, such as drug rehabilitation and educational opportunities.

■ Finally, under the *Shaw* test, we must consider the absence of other, better remedies. Bronson sets forth no alternatives, other than implying that he should have unlimited funds. Given the goals of rehabilitation, which can certainly include fiscal self-management, and the need to allocate taxpayer monies for other Departmental programs, we are not aware of a better remedy than a neutral monthly cap. Accordingly, we conclude that the policy passes constitutional muster.

■ We now turn to Bronson's second issue challenging the withholding of his "idle pay," a colloquialism referring to "spending money" given to inmates at the discretion of prison authorities, usually as an incentive or a reward for good behavior.[5] The term does not include compensation for working in a prison job. He

---

4. Prison authorities may make a reasonable attempt to balance the right of court access with prison budgetary concerns. *Bach v. Coughlin*, 508 F.2d 303 (7th Cir.1974); *Eason v. Nicholas*, 847 F.Supp. 109 (C.D.Ill.1994).

5. We have some question as to whether this issue is properly before us, since Williamson has not been named in the Petition for Review filed in the Court. *See* n. 2. However, the

argues that an unspecified Department regulation[6] gives him a right to idle pay, and that other inmates receive idle pay in lieu of jobs, and that the refusal to give him idle pay is discriminatory. Bronson has not offered any evidence in support of his discrimination theory. Moreover, prison administrators have a legitimate reason to restrict idle pay, *i.e.*, to encourage inmate compliance with rules. The record reveals that Bronson has a history of violent behavior, perhaps the most relevant example for our purposes being that he killed another inmate **while in prison.** (Deposition of Bronson, dated Sept. 1, 2000, pp. 15–17.) Given these facts, and the absence of any mitigating ones, we conclude that Bronson has not put forth any evidence indicating entitlement to idle pay or any discrimination on the part of institutional officers in refusing to award it.

Having concluded that Horn is entitled to judgment as a matter of law, we will grant his motion for summary judgment.

### ORDER

**NOW,** August 26, 2003, the motion for summary judgment filed by Respondent Horn in the above-captioned matter is granted and the Petition for Review is dismissed.

## CONCURRING AND DISSENTING OPINION BY Judge FRIEDMAN.

In light of the United States Supreme Court's decision in *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), I concur in the result reached by the majority. However, I cannot agree with the majority's analysis of the factors set forth in *Shaw v. Murphy,* 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001); thus, I also dissent.

### I. *Lewis*

In *Lewis,* the United States Supreme Court held that: (1) an inmate alleging a violation of the right of access to the courts must show an actual injury, i.e., that some shortcoming hindered the inmate's efforts to pursue a legal claim; and (2) the actual injury requirement is not satisfied by just any type of frustrated legal claim but is satisfied only by direct appeals from criminal convictions involving incarceration, habeas petitions and civil rights actions under 42 U.S.C. § 1983 to vindicate basic constitutional rights.[1]

Here, Purcell Bronson (Bronson) alleges in his petition for review that the Department of Corrections' (Department) allowance of $10.00 per month for legal mailings has hindered his efforts to pursue legal claims. (Petition, ¶ 13.) In his supporting affidavit, Bronson states that, because of the Department's policy, he could not timely serve court documents in the cases of *Bronson v. Maskulyak,* No. CV–95–2180 (M.D.Pa.); *Bronson v. Frank,* No. 97–7564 (3d Cir.); *Bronson v. Brenneman,* No. CV–95–2097 (M.D.Pa.); *Bronson v. Pas-*

---

Department makes no objection on this basis, so we will consider it.

6. We assume he is relying on Department Directive 816, entitled inmate compensation. Directive 816 states that an inmate who is not working "is eligible to receive 72 cents per day, five days per week as a daily allowance." *Id.* at VI(I). It is conditioned upon such factors as keeping the cell clean. The Directive also states in Section VIII, "[t]his poli-

cy does not create any rights in any person...."

1. In addition, the court held that: (1) the remedy for an access-to-courts violation is limited to the inadequacy that produced the injury in fact that the inmate has established; and (2) a court may not grant system-wide relief for the inadequacy unless the inmate shows that the inadequacy is sufficiently widespread to justify such relief. *Lewis.*

*tell,* No. 97–1475 (3d Cir.); and *Bronson v. Tischuk,* No. 97–3422 (3d Cir.). Bronson also indicates that he lost these cases.

Thus, Bronson's affidavit indicates that the Department's policy has hindered his efforts to pursue legal claims.[2] However, Bronson's affidavit does *not* indicate that the hindered cases involved direct appeals from criminal convictions involving incarceration, habeas petitions and/or civil rights actions under 42 U.S.C. § 1983 to vindicate basic constitutional rights. Therefore, in responding to the motion for summary judgment before us here, Bronson has *not* set forth sufficient facts to satisfy the actual injury requirement. *Lewis.*

Accordingly, on this basis, I would grant summary judgment and dismiss Bronson's petition for review.

## II. *Shaw*

When a prison regulation impinges on an inmate's constitutional rights, the regulation nonetheless is valid if it is reasonably related to a legitimate penological interest. *Shaw.* In determining the reasonableness of a regulation, a court must consider four factors: (1) whether there is a valid rational connection between the prison regulation and a legitimate and neutral governmental purpose; (2) whether there are alternative means of exercising rights that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right will have an impact on guards, other inmates and the allocation of prison resources generally; and (4) whether ready alternatives to the prison regulation are absent. *Id.*

First, the stated reason for the $10.00 limitation on postage for legal mailings is fiscal responsibility to the taxpayers. Unlike the majority, I cannot conclude that fiscal responsibility is a *neutral* governmental purpose. Far from being neutral, the fiscal responsibility asserted here targets *only* indigent inmates, like Bronson, who require more than $10.00 per month for legal mailings.

Second, an indigent inmate who requires more than $10.00 per month for legal mailings has no alternatives that would enable him to exercise his right of access to the courts. The majority suggests that indigent inmates can request an extension of time for the filing of documents, seek leave to file fewer documents or seek a court order requiring the Department to permit additional mailing. (Majority op. at 6.) However, it is impossible for an indigent inmate to mail a request for an extension of time or an application for another form of relief if the indigent inmate has no money for postage.[3]

Third, I fail to see how the amount of money allowed for legal mailings will have any impact on the guards, other inmates or the allocation of prison resources generally. The dollar amount permitted is merely a bookkeeping function, and, from the evidence presented by the Department, this function is performed by a computer. (*See* Department's Appendix, Ex. 14.1.) Moreover, the Department has presented no evidence that the prison mail system, operating as it does at the present time, cannot handle any increase in the amount of legal mail that would result from a return to $40.00 per month for Bronson.

Indeed, I point out that, under *Lewis,* Bronson is entitled only to have his *own*

---

**2.** As the affidavit suggests, Bronson's inability to file timely court documents could have resulted in the denial of his legal claims.

**3.** Even if an indigent inmate had the postage, there is no guarantee that a court would grant relief.

allowance for legal mailings returned to $40.00 per month. This court cannot provide system-wide relief unless Bronson can establish that the inadequacy of the $10.00 per month limitation is widespread, i.e., that it does not meet the legal mailing needs of much of the prison population in general. *Lewis.* Thus, I am not persuaded by the Department's argument that the monetary savings from the $10.00 per month limit has resulted in great budgetary gains for drug rehabilitation programs and educational opportunities for inmates.[4] If this court were to declare that the $10.00 per month limitation is unconstitutional *as applied to Bronson,* the Department would lose only $30.00 per month for drug rehabilitation programs and educational opportunities for inmates.

Fourth, the Department does not present evidence to show that it cannot cut $30.00 per month from some other area of its budget. In fact, the Department does not even argue in its brief that ready alternatives are absent to recoup $30.00 per month. Like the majority, the Department assumes that this court would grant system-wide relief, contrary to *Lewis,* and require that the Department return the monthly allowance to $40.00 for *all* indigent inmates.

Thus, assuming that Bronson satisfied the actual injury requirement, I would conclude that the $10.00 legal mailing limitation is unreasonable, as applied to Bronson.

---

4. Although the majority accepts the Department's argument that it needs more money for drug rehabilitation and educational opportunities, the Department has presented no evidence that: (1) the money previously budgeted for drug rehabilitation and educational opportunities was insufficient; (2) the Department reduced the legal mailing allowance specifically because more money was needed for drug rehabilitation and educational opportunities; or (3) the Department actually has used monetary savings from the $10.00 limitation to fund those budgetary items.