# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mac Kenneth Ortiz,            :
           Petitioner     :
           :
        v.              :    No. 615 M.D. 2018
           :    Submitted: October 2, 2020
Pa. Department of Corrections,     :
John Wetzel - Secretary of Corrections, :
Pa. Attorney General's Office      :
Superintendant: Lee E-Stock of     :
S.C.I. Pine Grove, Johnstown      :
United States Postal Service Branch,   :
           Respondents   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE P. KEVIN BROBSON, Judge[1]
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**            **FILED: September 14, 2021**

This is a matter in the Court's original jurisdiction. Petitioner Mac Kenneth Ortiz (Ortiz), an inmate at the State Correctional Institution at Pine Grove (SCI-Pine Grove),[2] filed his Petition, *pro se*, seeking an injunction to stay further implementation of a new inmate mail policy (hereafter, mail policy) by the Pennsylvania Department of Corrections (DOC), DOC Secretary John Wetzel, and

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] At all times relevant to the matters set forth in Ortiz's petition for review (Petition), Ortiz was an inmate at SCI-Pine Grove. In or about February 2021, however, Ortiz was transferred from SCI-Pine Grove to the State Correctional Institution at Houtzdale (SCI-Houtzdale).

Lee Estock, Superintendent at SCI-Pine Grove (Superintendent Estock),[3] (collectively, DOC Respondents).[4] Presently before the Court for disposition is the DOC Respondents' application for special relief in the nature of a motion for judgment on the pleadings (Motion). For the reasons set forth below, we grant the DOC Respondents' Motion and dismiss Ortiz's Petition with prejudice.

In his Petition, Ortiz alleges that DOC's mail policy imposes an unconstitutional burden on his right to receive his mail and his right to privacy in his mail, because the original versions of his mail are sent to a third-party vendor where they are copied, and Ortiz, thereafter, receives the copies rather than the original documents. (Pet. ¶¶ 1-4, 11.) Ortiz claims this occurs with both his privileged (legal) mail from attorneys and the courts and his non-privileged mail from his family and friends. (Pet. ¶ 1.) Specifically, Ortiz alleges:

1.    . . . [DOC] has violated the [c]onstitutional [r]ights of [Ortiz], by prohibiting [Ortiz from receiving] the original mail from family and friends, as well as that from [a]ttorneys (*i.e.*[,] subscriptions, photos, letters, etc.) and [c]ourts.

. . . .

3.    [DOC Respondents] have all conspired to [sic] [c]ustodial [i]nterference, by restricting the delivery of original legal documents, and providing photo copies without anyone to legally certify that the documents are original.

. . . .

---

[3] In both his Petition and the caption for this matter, Ortiz incorrectly identified Superintendent Estock as "Superintendant Lee E-Stock." Throughout the remainder of this opinion, we will continue to utilize the correct spelling of Superintendent Estock's name.

[4] Ortiz also named the Pennsylvania Office of Attorney General (OAG) as a respondent in this matter. By order dated January 16, 2019, however, in response to OAG's preliminary objection alleging misjoinder and Ortiz's motion to withdraw due to defective joinder, this Court sustained OAG's preliminary objection and dismissed OAG as a respondent.

11.     [Ortiz] avers that [he] has a specific legal security interest in [the] privacy of [his] mail, which the [DOC Respondents] can[]not guarantee.

(Pet. ¶¶ 1, 3, 11.) Ortiz further claims that DOC's justification for the mail policy—to counter a sudden influx of opioids and synthetic cannabinoids into Pennsylvania's state correctional institutions—is unsupported by the evidence. (Pet. ¶¶ 5-8.) According to Ortiz, DOC, therefore, exceeded its authority by implementing the mail policy. (Pet. ¶ 10.) For all these reasons, Ortiz seeks injunctive relief to prevent further implementation of the mail policy.

On July 3, 2019, the DOC Respondents filed an answer with new matter to Ortiz's Petition.[5] Therein, the DOC Respondents aver that the mail policy is constitutional as it relates to non-privileged mail because: (1) Ortiz does not have a constitutional right to receive the original copies of his non-privileged mail; (2) the mail policy does not violate Ortiz's right to privacy—*i.e.*, the non-privileged mail is only diverted and copied but not read; and (3) the mail policy does not prevent Ortiz from communicating with his family, friends, attorneys, or the courts. (Answer with New Matter ¶¶ 21-23, 28, 30.) With respect to privileged mail, the DOC Respondents aver that DOC entered into a court-approved settlement agreement in federal court, whereby the DOC Respondents "agreed to cease any copying of

---

[5] The DOC Respondents first responded to Ortiz's Petition with preliminary objections, alleging lack of proper service, legal insufficiency, and lack of jurisdiction over Superintendent Estock, a non-statewide officer. Subsequent thereto, at this Court's direction, Ortiz served his Petition on the DOC Respondents by certified mail as required by Pennsylvania Rule of Appellate Procedure 1514(c). As a result, by order dated December 19, 2018, this Court overruled the DOC Respondents' preliminary objection alleging lack of proper service. With respect to the DOC Respondents' preliminary objection alleging legal insufficiency, the DOC Respondents decided to reserve the issue of the constitutionality of the mail policy until a more complete record could be created. In a memorandum opinion filed on June 6, 2019, this Court overruled the DOC Respondents' preliminary objection relative to jurisdiction over Superintendent Estock and directed the DOC Respondents to file an answer to Ortiz's Petition.

privileged correspondence and to continue to use the attorney control number system."[6] (*Id.* ¶¶ 33-34.) The DOC Respondents, therefore, claim that the mail policy, as modified by the court-approved settlement agreement, does not violate Ortiz's right to privacy, as Ortiz's privileged mail is not copied and the originals are given directly to him. (*Id.* ¶¶ 31, 38.) The DOC Respondents further aver that, even if there were a constitutional violation at issue, the mail policy would, nevertheless, be permissible because it is reasonably related to legitimate penological interests, "including the reduction of the entry of drugs into the state correctional institutions, namely opioids and synthetic cannabinoids." (*Id.* ¶¶ 21, 24.)

Subsequent thereto, on September 6, 2019, Ortiz filed a responsive pleading to the DOC Respondents' answer with new matter. In his answer, Ortiz claims that DOC has failed to prove it had the authority to enact the mail policy. (Ortiz's Answer ¶¶ 1-2.) Ortiz further alleges that the mail policy is unconstitutional as being more restrictive than necessary to accomplish the alleged goal of inmate and staff safety, as he claims there is no evidence that incoming mail is the cause of any staff or inmate contamination. (*Id.* ¶¶ 2, 5, 7.) Ortiz also admits that, as of April 2019, the mail policy was amended to allow inmates to receive the original copies of their privileged mail after inspection and that his privileged mail is no longer being

---

[6] The attorney control number system is set forth in the mail policy, as modified, which provides that attorneys, courts, or other elected or appointed state or federal government officials may apply for a unique control number to transmit confidential and/or privileged communication directly to an inmate. (Answer with New Matter, Exhibit "B," at 1-10, 1-11.) Once a control number is obtained, correspondence sent to an inmate must have the control number affixed to the front of the envelope, and the envelope must also display the relevant DOC-issued weekly time code. (*Id*. at 1-11.) Incoming correspondence affixed with a valid control number and time code is then subjected to x-ray imaging and K-9 air scans, but the mail is not opened by mailroom staff, and the original, unopened mail is provided directly to the inmate. (*Id*. at 1-11, 1-12, 1-13.)

copied. (*Id.* at 1-2.)[7] Ortiz did not, however, respond to the vast majority of the factual averments set forth in the DOC Respondents' answer with new matter (paragraphs 21 through 45), including those averments concerning the modifications to the mail policy as it relates to privileged mail—*i.e.*, that privileged mail is no longer copied and the originals are provided directly to the inmate.

After the close of the pleadings, the DOC Respondents filed their Motion. In their Motion, the DOC Respondents contend that, in light of Ortiz's multiple admissions—*i.e.*, his failure to respond to the factual averments set forth in paragraphs 21 through 45 of their answer with new matter—they are entitled to judgment as a matter of law because, *inter alia*: (1) Ortiz cannot prove that the mail policy violates any of his constitutional rights; (2) this Court does not have jurisdiction over cases that do not involve DOC's limitation or violation of an inmate's constitutional rights; and (3) even if Ortiz could prove that the mail policy violates his constitutional rights and that this Court has jurisdiction, the mail policy survives constitutional scrutiny, as it is reasonably related to legitimate penological interests, namely the reduction of the entry of opioids and synthetic cannabinoids into Pennsylvania's state correctional institutions. (Motion ¶¶ 6-8.)

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Parish v. Horn*, 768 A.2d 1214, 1215 n.1 (Pa. Cmwlth. 2001), *aff'd*, 800 A.2d 294 (Pa. 2002). We must view the non-moving party's allegations as true, but only those facts specifically admitted by the non-moving party may be considered against him. *Casner v. Am. Fed'n of State,*

---

[7] In his reply to new matter, Ortiz included a section entitled "Case History" that contained unnumbered paragraphs. This is a citation to that section of Ortiz's reply.

*Cnty. & Mun. Emps.*, 658 A.2d 865, 869 (Pa. Cmwlth. 1995). In conducting this inquiry, we must consider only the pleadings themselves and any documents or exhibits properly attached thereto. *Id*.

The United States Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78 (1987), set forth the legal standard that governs our review of the mail policy. The Supreme Court emphasized in the opinion that, while courts "must take cognizance of the valid constitutional claims of prison inmates," the judicial branch is, nevertheless, ill-equipped to deal with the urgent issues inherent in prison administration.[8] *See Turner*, 482 U.S. at 84-85. In recognition of these principles, the *Turner* Court held that a prison regulation that infringes upon inmates' constitutional rights will still be valid so long as the regulation is reasonably related to legitimate penological interests. *Id*. at 89. Our threshold task, therefore, is to determine whether the mail policy infringes upon Ortiz's constitutional rights; if we conclude that it does, then we must consider whether the mail policy is, nonetheless, reasonably related to legitimate penological interests. *Brown v. Pa. Dep't of Corr.*, 932 A.2d 316, 317-20 (Pa. Cmwlth. 2007); *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006).

In *Bussinger v. Department of Corrections*, 29 A.3d 79 (Pa. Cmwlth. 2011), *aff'd*, 65 A.3d 289 (Pa. 2013), this Court recognized two constitutional rights

---

[8] The United States Supreme Court further noted:

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.

*Turner*, 482 U.S. at 84-85.

concerning an inmate's mail under the First Amendment to the United States Constitution. First, the right of access to the courts is implicated in cases concerning limitations on an inmate's right to send and receive privileged mail,[9] because "[i]nmates have a 'fundamental constitutional right of access to the courts.'" *Bussinger*, 29 A.3d at 84 (quoting *Bronson v. Horn*, 830 A.2d 1092, 1095-96 (Pa. Cmwlth. 2003), *aff'd*, 848 A.2d 917 (Pa.), *cert. denied*, 543 U.S. 944 (2004)). Next, we noted that courts have long interpreted the First Amendment as guaranteeing inmates a general right to communicate by mail. *Id*. at 84-85 (citing *Turner*, 482 U.S. at 91-93). Most of the precedent in this arena concerns privileged mail, however, and the courts have made it clear that the protections afforded privileged mail and access to the courts are greater than those for non-privileged mail. *See, e.g.*, *Fontroy v. Beard*, 559 F.3d 173, 174 (3d Cir. 2009) ("constitutional obligations require . . . DOC to take additional measures" in handling privileged mail); *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 130-31 (1977) (upholding restriction on non-privileged bulk mailings); *Turner*, 482 U.S. 91-93 (upholding restriction on non-privileged inmate-to-inmate correspondence).

As it concerns non-privileged mail, we conclude that Ortiz has failed to demonstrate a constitutional violation at issue. As we have observed, the First Amendment to the United States Constitution only guarantees a general right to communicate by mail. It does not ensure that Ortiz will receive the original copies of his mail or that Ortiz has a right of privacy with respect to his non-privileged mail equivalent to that of privileged mail. *See Bussinger*, 29 A.3d at 84-85. Thus, Ortiz has not raised any constitutional implications with regard to his non-privileged mail,

---

[9] Privileged mail is defined as privileged correspondence between an inmate and his/her attorney, as well as confidential court mailings. *See Bussinger*, 29 A.3d at 91; *Brown*, 932 A.2d at 318.

7

because he has not alleged that he is not receiving the mail in its entirety—*i.e.*, his general right to communicate by mail has not been affected by the mail policy.

DOC's mail policy relative to privileged mail requires further consideration. This Court has previously held that the inspection of privileged mail outside the presence of an inmate violates the privacy of the communication and, hence, infringes upon the inmate's right to freedom of speech. *Brown*, 932 A.2d at 317-19. There is no question that, at least initially, the mail policy required that privileged mail was to be opened and copied outside the presence of the inmate and then only the copy was to be forwarded to the inmate. In their answer with new matter, however, the DOC Respondents have asserted that, since the time that Ortiz filed his Petition, DOC has abandoned that aspect of the mail policy and has reverted to a control numbering system that protects the privacy of an inmate's privileged communications. Through his answer, Ortiz has admitted to these facts.

Pennsylvania Rule of Civil Procedure No. 1029(b) provides: "Averments in a pleading to which a responsive pleading is required[—*i.e.*, averments of fact—]are admitted when not denied specifically or by necessary implication." *See also Fox v. Pocono Springs Civic Ass'n, Inc.*, 695 A.2d 484, 485 n.1 (Pa. Cmwlth. 1997) ("Failure of a party to answer [n]ew [m]atter permits [a] trial court to treat averments contained therein as admitted and authorizes judgment on the pleadings."). Here, Ortiz did not respond to paragraphs 21 through 45 of the DOC Respondents' new matter. This included the DOC Respondents' averments relative to the court-approved settlement, whereby the DOC Respondents "agreed to cease any copying of privileged correspondence and to continue to use the attorney control number system." (*See* Answer with New Matter ¶¶ 33-34.) While we are mindful of the fact that we do not hold pleadings drafted by *pro se* complainants to the same

8

stringent standards expected of pleadings drafted by lawyers, *Madden v. Jeffes*, 482 A.2d 1162, 1165 (Pa. Cmwlth. 1984), Ortiz's reply to the new matter further provides: "As of April[] 2019[,] the [DOC] Respondents amended their [mail policy], permitting []an [i]nmate to directly receive their original privileged mail, after inspection, and such [mail] is not being copied." (Ortiz's Answer at 1-2.) Ortiz, thus, similarly admits to the change in DOC's mail policy concerning privileged mail. Considering Ortiz's admissions, as we may, the pleadings demonstrate that DOC has amended the mail policy as it concerns privileged mail, and that, as of April 2019, DOC no longer opens and copies privileged mail outside the presence of the inmate but, instead, has reverted to a control numbering system whereby original privileged mail is provided to inmates. As a result, we conclude that Ortiz has likewise not raised any constitutional implications as it concerns his privileged mail, because, under DOC's modified mail policy, Ortiz is receiving the original, uncopied versions of his privileged mail, and the privacy of his privileged communications is no longer being violated.[10] *See Bussinger*, 29 A.3d at 84; *Brown*, 932 A.2d at 317-19.

Based on the foregoing, we conclude that DOC's mail policy does not violate Ortiz's constitutional rights. For that reason, we need not engage in a full *Turner* analysis, as Ortiz fails to clear the initial hurdle of establishing a constitutional

---

[10] In his reply to new matter, Ortiz alleges that the mail policy, as modified, still violates his constitutional rights as it relates to his privileged mail, but he does not elaborate how. In his brief, Ortiz notes that, in many cases, his privileged mail is misdirected to the third-party vendor as opposed to being delivered directly to him. (Ortiz's Brief at 9-10.) The documents that Ortiz refers to in his brief, however, are not privileged mail; rather, they consist of mailings between the DOC Respondents and himself, and the DOC Respondents' brief in support of their Motion. (*Id*. at 10.) Furthermore, the DOC Respondents' modified mail policy utilizes a control numbering system for privileged mail that is virtually identical to the system this Court upheld in *Brown* as constitutional. *See Brown*, 932 A.2d at 317-18, 321-22. Thus, Ortiz's contentions in his brief are not persuasive.

violation. Taking away the unfounded constitutional concerns from Ortiz's Petition, what is left are averments concerning the DOC Respondents' authority to enact the mail policy and their justification for doing so, which claims this Court has repeatedly denied as failing to establish a cause of action and, instead, has prudently deferred to the judgment of DOC. *See Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269, 1275 n.9 (Pa. Cmwlth. 2021) (en banc) ("To the extent that [an inmate's] due process claim could be interpreted as springing from DOC's violation of its own internal administrative regulations, we would not have original jurisdiction to consider such a claim, as DOC's regulations do not, in themselves, confer upon inmates any actionable rights.").

Accordingly, because Ortiz cannot prevail on his claim that the mail policy infringes on a constitutional right and the remainder of the averments in his Petition also do not establish a cause of action, we grant the DOC Respondents' Motion and dismiss Ortiz's Petition with prejudice.[11] Given that this Court's original jurisdiction extends to Commonwealth government entities and not to actions directed at federal government agencies, we also dismiss the Petition as to the Johnstown United States Postal Service Branch, the sole remaining respondent, for lack of jurisdiction. *See* 42 Pa. C.S. § 761.

P. KEVIN BROBSON, Judge

---

[11] On March 4, 2021, Ortiz filed an emergency motion for injunctive/stay relief (Emergency Motion), seeking to have this Court order the DOC Respondents to transfer him and his personal property back to SCI-Pine Grove. In support thereof, Ortiz alleged that the DOC Respondents' actions—*i.e.*, transferring Ortiz from SCI-Pine Grove to SCI-Houtzdale, an allegedly more violent correctional institution—could only be viewed as retaliation for Ortiz's initiation of this action. Such relief, however, is inappropriate in the context of this action. Should Ortiz believe that he has a separate claim against the DOC Respondents for retaliation, he may file a separate action.

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mac Kenneth Ortiz,                              :
                              Petitioner         :
                                                :
        v.                                      :        No. 615 M.D. 2018
                                                :
Pa. Department of Corrections,                  :
John Wetzel - Secretary of Corrections,         :
Pa. Attorney General's Office                   :
Superintendant: Lee E-Stock of                  :
S.C.I. Pine Grove, Johnstown                    :
United States Postal Service Branch,            :
                              Respondents        :

# **O R D E R**

AND NOW, this 14th day of September, 2021, the motion for judgment on the pleadings filed by the Pennsylvania Department of Corrections (DOC), DOC Secretary John Wetzel, and Lee Estock, Superintendent of the State Correctional Institution at Pine Grove, is GRANTED, and the petition for review (Petition) filed by Petitioner Mac Kenneth Ortiz (Ortiz) is DISMISSED with prejudice. The emergency motion for injunctive/stay relief filed by Ortiz on March 4, 2021, is DENIED. The matter is DISMISSED as to the Johnstown United States Postal Service Branch for lack of jurisdiction.

_____
P. KEVIN BROBSON, Judge