591 A.2d 326

**Russell SHOATS, Petitioner,**

v.

**COMMISSIONER, PENNSYLVANIA DEPARTMENT OF CORRECTIONS et al., Respondents.**

Commonwealth Court of Pennsylvania.

Submitted March 15, 1991.

Decided May 10, 1991.

608

Russell Shoats, pro se.

Michael L. Harvey, Deputy Atty. Gen., with him, John G. Knorr, III, Chief Deputy Atty. Gen., and Ernest D. Preate, Jr., Atty. Gen., for respondents.

Before COLINS and KELLEY, JJ., and BLATT, Senior Judge.

KELLEY, Judge.

Russell Shoats brings this action in our original jurisdiction characterized as an "Application for Special Relief and/or Summary Judgment" seeking to compel the Department of Corrections (DOC) to provide access to Pennsylva-

nia legal materials. Before us are the motions of both parties for summary judgment.

At issue in this case is the duty of DOC to provide Pennsylvania legal materials to a Pennsylvania state inmate who is temporarily housed in an out-of-state federal correctional institution.

Shoats is currently serving a prison sentence imposed by the Court of Common Pleas of Philadelphia County.[1] Following the October, 1989 riots at the State Correctional Institution (SCI) at Camp Hill, inmates from SCI–Camp Hill and from other SCI's were temporarily transferred by DOC to the custody of the federal Bureau of Prisons (BOP). There is no indication in the record of how many such inmates were transferred, nor any explanation of how these inmates were chosen. In any event, Shoats, who was incarcerated at SCI–Dallas, was transferred to the United States Penitentiary at Leavenworth, Kansas, on November 17, 1989, where he remains at this time. DOC states that Pennsylvania inmates are being returned to the state correctional system at the rate of approximately fifteen per week, and that all prisoners will be returned within the next eight or nine months.

On April 3, 1990, DOC circulated a memorandum to "Inmates Housed in Federal Facilities" setting forth the procedure to request legal materials (hereinafter referred to as the "book paging system" or the "system"). This system was to be utilized by "all Pennsylvania inmates temporarily transferred to the Federal Bureau of Prisons," and was explained as follows:

1. All requests for legal material should be sent directly to Mr. John Palakovich at SCI–Camp Hill. The request should be as specific as possible to allow for an appropriate response. Those that are not specific may have to be returned for further information.

1. While the record is unclear, Shoats maintains that he plans to pursue post-conviction actions in both Huntingdon and Dauphin Counties. DOC mentions a completed post-conviction proceeding in Montgomery County.

2. Each request will be forwarded to the librarian who will be allowed ten (10) working days to process each request.

3. The cases will be photocopied and sent back to the inmate. A cash slip will be completed and maintained in the library. Upon return to a Department of Corrections institution, each inmate will be expected to turn in the photocopies. In the event these are not returned, the inmate's account will be assess [sic] the cost of the copy work at 10 cents per page.

4. If a request is too broad in scope, the librarian reserves the right to not fill the request slip. The library staff will notify the inmate by written response indicating why the request slip was not filled.

Access to the system, however, was qualified by another memorandum dated April 8, 1990 and addressed to the Regional Director of BOP (memorandum). This memorandum specified that the memorandum describing the system was to be distributed to "PA inmates that were transferred from the Camp Hill Institution *only.*" (emphasis in original).[2] As noted above, Shoats was not transferred from Camp Hill, but from SCI–Dallas.

Shoats argues that the book paging system denies him his constitutional right of access to an adequate law library as established in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and that the memorandum effectively denies him even this limited assistance by limiting requests to inmates transferred only from SCI–Camp Hill.

DOC argues that the system is adequate, that it is not limited only to inmates transferred from SCI–Camp Hill, that Shoats' transfer is temporary in nature, and that Shoats lacks standing because he is not currently litigating

2. To further complicate matters, another memorandum was circulated from the Regional Counsel of BOP in Philadelphia on April 9, 1990 to all Regional Counsel, stating clearly that the procedures pertained "to those Pennsylvania inmates transferred from the CAMP HILL institution."

any post-conviction action. DOC further contends that it has never received a request from Shoats.

## STANDING

 DOC argues that Shoats lacks standing to bring this action because he has failed to show that he has been adversely affected by the alleged lack of legal materials in the Leavenworth law library. We disagree. Our Supreme Court has held:

> The core concept [of standing], of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law.

*William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 192, 346 A.2d 269, 280–81 (1975).

We have no trouble finding that Shoats has standing. He alleges that by virtue of being a Pennsylvania inmate confined in an out-of-state federal penitentiary, he is denied access to legal assistance. This alleged injury is directly related to the challenged action.[3]

We also note that the Third Circuit has held that where a claim directly implicates the core *Bounds* issue of denial of access to the courts, "an actual injury necessarily occurs by virtue of a prison's failure to provide the level of assistance required under *Bounds. Peterkin v. Jeffes,* 855 F.2d 1021 (3rd Cir.1988). Whether Shoats is currently pursuing post-conviction relief is therefore irrelevant for the purpose of standing.

---

**3.** Moreover, while DOC contends that Shoats "has not identified any pending legal proceeding for which he needs Pennsylvania law materials," Respondent's Brief at 5, Shoats in his petition for review avers that he presently has pending a post conviction petition in Philadelphia County, a civil action in Philadelphia County, and plans to litigate civil actions in Luzerne and Lackawanna Counties as well as post conviction actions in Huntingdon and Dauphin counties. Petition for Review, paragraphs 7 and 9.

DOC also argues that Shoats never requested legal materials from either SCI–Camp Hill or SCI–Dallas, and therefore has suffered no injury. As stated in *Peterkin,* however, the denial of access in and of itself constitutes the actual injury. We also find DOC's argument without merit, on independent grounds. The book paging system contemplated that inmates were to contact SCI–Camp Hill. The memorandum, however, stated specifically that the system could be utilized only by inmates transferred from Camp Hill. Shoats was therefore precluded from requesting materials from either institution.

## BOUNDS v. SMITH

The U.S. Supreme Court in *Bounds* held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498. The Supreme Court did not mandate access to law libraries for all prisoners, but rather left to the state the choice of "what alternative would 'most easily and economically' fulfill this duty." *Id.* at 819, 97 S.Ct. at 1493. It is important to note that providing access to law libraries is not the only manner in which a state may meet its *Bounds* obligation. Other methods suggested by the Supreme Court include:

> [T]he training of inmates as paralegal assistants to work under lawyers' supervision, the use of paraprofessionals and law students, either as volunteers or in formal clinical programs, the organization of volunteer attorneys through bar associations or other groups, the hiring of lawyers on a part-time consultant basis, and the use of full-time staff attorneys, working either in new prison legal assistance organizations or as part of public defenders or legal services offices.

*Bounds,* 430 U.S. at 831, 97 S.Ct. at 1499.

While this precise issue has not arisen in Pennsylvania prior to this case, we find adequate guidance in the deci-

sions of two of our sister states. When a Delaware inmate had been transferred to a federal prison, the Supreme Court of Delaware held that he was entitled to reasonable access to Delaware legal reference materials or to a reasonable alternative thereto. *Johnson v. State*, 442 A.2d 1362 (Del. 1982). The Supreme Court of New Hampshire seemed to agree that a state inmate incarcerated in a federal institution had a right to access to state legal materials, but noted that "[t]he duty to provide either adequate law libraries or legal assistance would seem to belong to the federal prison officials at that facility." *Goodnow v. Perrin*, 120 N.H. 669, 421 A.2d 1008 (1980).[4] We therefore have no trouble holding that Shoats has a right of access to Pennsylvania legal materials while confined in Leavenworth.

Several courts of appeals have held that the burden of proof is ultimately on state correction departments to show that the inmate did have adequate access to the courts. *See Rich v. Zitnay*, 644 F.2d 41, 43 (1st Cir.1981); *Cruz v. Hauck*, 515 F.2d 322 (5th Cir.1975), *cert. denied* sub nom. *Andrade v. Hauck*, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). The inmate, however, must at least make a prima facie showing of lack of access. *See Rich v. Zitnay* at 43; *Hossman v. Spradlin*, 812 F.2d 1019, 1021, n. 2 (7th Cir.1987).

### TEMPORARY NATURE OF TRANSFER

DOC argues that the Shoats' transfer to Leavenworth is temporary in nature and was brought about by an emergency situation triggered by the Camp Hill riots. It appears that DOC seeks to create an "exigent circumstances" exception to the *Bounds* requirement. We cannot agree.[5] Even if Shoats is returned to Pennsylvania within the eight or nine months contemplated by DOC, his absence from the state, and consequently from access to Pennsylvania legal

---

**4.** Shoats also named the Federal Bureau of Prisons as respondent in this action.

**5.** We do, however, recognize that Shoats' transfer back to Pennsylvania would render his argument moot.

materials, will have approached two years. At least one court has held that access to legal materials must be provided at a correctional intake facility which retains prisoners for no longer than ninety days. *See Berry v. Department of Corrections*, 144 Ariz. 318, 697 P.2d 711 (Ariz.Ct. App.1985). *Cf. Cookish v. Cunningham*, 787 F.2d 1 (1st Cir.1986) (restricted access to library during initial quarantine period acceptable where restriction was for security reasons, period was brief, and access could be had for emergency reasons).

## SUMMARY JUDGMENT

This case is currently before us on motions for summary judgment by both parties, as provided by Pa. R.C.P. No. 1035. An entry of summary judgment may be granted only in cases where the right is clear and free from doubt, if there is no issue of material fact, and if the moving party is entitled to judgment as a matter of law. *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986). In determining whether to grant a motion for summary judgment, on the critical question of whether there is a genuine issue as to any material fact, the party who brought the motion has the burden of proving that no genuine issue of fact exists. All doubts as to the existence of a genuine issue of a material fact are to be resolved against the granting of the summary judgment. *Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 553 A.2d 900 (1989).

The threshold issue here is whether Shoats can make out a prima facie case showing that he has been denied access. Shoats alleges that he has not "been given adequate acess [sic] to Pennsylvania law books, legal pamphlets, citations or the assistance of trained legal help to allow him to litigate . . . in the Pennsylvania Court System." DOC, however, argues that Shoats has not shown the unavailability of Pennsylvania legal materials in the Leavenworth law library. As the moving party on his motion for summary judgment, Shoats has the burden of proving

that no genuine issue of fact exists. The record shows only his bare allegation, which DOC has controverted. Consequently, doubts must be resolved against the granting of summary judgment, and we must deny Shoats' motion.

By the same token, however, the existence of the same issue of material fact also requires us to deny DOC's motion. While DOC raises the question as to the contents of the Leavenworth law library, as the moving party on its motion, it must prove that no genuine issue of fact exists. Since DOC offers no proof, we must deny its motion for summary judgment.

Pa.R.C.P. No. 1035(c) provides that when summary judgment is not rendered upon the whole case, the court shall, if practicable, ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. Pursuant to Pa.R.C.P. No. 1035(c), we conclude that the following facts exist without substantial controversy:

1. Petitioner is currently serving a Pennsylvania state prison sentence and is being housed at the U.S. Penitentiary at Leavenworth, Kansas.

2. Petitioner was transferred to USP Leavenworth from SCI Dallas on November 17, 1989.

3. The Department of Corrections has established a book paging system to provide inmates incarcerated in federal institutions with access to Pennsylvania legal materials.

4. The Department of Corrections has expressly limited access to said book paging system to inmates transferred from SCI–Camp Hill.

The following fact is actually and in good faith controverted:

1. The availability to petitioner of Pennsylvania legal materials in the law library of USP Leavenworth.

Because there remains a genuine issue as to a material fact, petitioner's motion for summary judgment and respon-

dent's motion for summary judgment must accordingly be denied.

## ORDER

NOW, this 10th day of May, 1991, petitioner's motion for summary judgment and respondent's motion for summary judgment are denied without prejudice.