# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kirk J. Bard, : 
    Petitioner : 
  : No. 201 M.D. 2024
  v. : 
  : Submitted: July 7, 2025
Pennsylvania Department of : 
Corrections, : 
    Respondent : 


BEFORE: HONORABLE ANNE E. COVEY, Judge
    HONORABLE LORI A. DUMAS, Judge
    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**        **FILED: October 24, 2025**


   Kirk J. Bard (Petitioner) has *pro se* filed a petition for review (Petition) in this Court's original jurisdiction. Petitioner seeks relief in the form of an injunction directing prison staff to advance postage to non-indigent litigants. Petitioner also filed an application for summary relief. In response, the Pennsylvania Department of Corrections (DOC) has filed three preliminary objections asserting that (1) Petitioner has failed to state a claim upon which relief can be granted, (2) this Court lacks jurisdiction over claims regarding DOC's grievance process, and (3) Petitioner is precluded from injunctive relief because DOC has sovereign immunity. After careful review, we sustain DOC's preliminary objections in the nature of a demurrer and for lack of jurisdiction over DOC's grievance process, overrule DOC's preliminary objection raising sovereign immunity, dismiss the Petition without

prejudice and grant Petitioner 30 days from the date of this decision and order within which to file an amended petition for review, and dismiss Petitioner's application for summary relief as moot.

## I. BACKGROUND[1]

Petitioner is an inmate currently incarcerated at the State Correctional Institution Somerset (SCI-Somerset). On March 4, 2024, Petitioner filed the instant Petition, naming DOC as respondent. Petitioner originally filed his Petition in the Court of Common Pleas, which transferred it to this Court. In his Petition, Petitioner alleges that the failure of mailroom staff at SCI-Somerset to send his outgoing legal mail due to insufficient funds for postage in his inmate account at the time of mailing constitutes an obstruction of his access to courts in violation of article I, section 20 of the Pennsylvania Constitution[2] and the First and Fourteenth Amendments[3] of the United States Constitution. Additionally, Petitioner challenges the adequacy and outcome of the grievance process, asserting that DOC officials failed to meaningfully address his concerns regarding the postage policy and ultimately

---

[1] Unless stated otherwise, we derive this background from those facts alleged in Petitioner's Petition for Review (Petition). *See* Pet., 3/4/24.

[2] This Section provides for the right of petition, that "[t]he citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance." Pa. Const. art. I, § 20. We construe Petitioner's implication of the right of petition as a further advancement of his First Amendment claim.

[3] Petitioner asserts that "the mailroom supervisor's capricious decision to obstruct prisoners' right to petition the government for a redress of grievances violates the Equal Protection Clauses of the Pennsylvania and the United States Constitution, as similarly situated prisoners in Pennsylvania's other state prisons are not being subjected to the same obstruction." *See* Pet. at 5-6 (cleaned up). However, Petitioner provides no further facts in support of this claim beyond a further bald assertion that in his 30 years of incarceration, he has never previously had mail returned for insufficient postage and that he "knows of no Pennsylvania state prison other than SCI-Somerset" where legal mail is returned under such circumstances. *See id.* at 2. Such conclusory allegations, without any factual or evidentiary support, are insufficient to state a cognizable Equal Protection claim, and therefore, we decline to address it further.

denied him relief despite the constitutional implications alleged in his claim. *See* Mem. of L., 5/17/24.[4]

Petitioner submitted two articles of mail to prison authorities on February 6, 2024, to be mailed on the following day. One piece of mail was non-privileged and addressed to a private citizen, while the other piece of mail was legal mail and contained Petitioner's civil complaint against DOC, which was addressed to the Somerset County Courthouse. According to Petitioner, he left $6.68 in his inmate account for the purpose that it would cover the postage charges for both pieces of mail. On February 7, 2024, Petitioner received a receipt that $2.85 had been deducted from his inmate account to cover postage on the non-privileged mail. However, Petitioner did not receive a similar receipt for funds deducted that went toward the postage for his legal mail. Two days later, Petitioner's legal mail was returned to him due to insufficient funds for postage in his inmate account.

Petitioner contends that the mailroom supervisor has misapplied the DOC mailroom policy governing the advancement of postage for legal mail for indigent litigants.[5] Petitioner asserts that although the applicable policy permits

---

[4] This filing includes additional allegations and documents attached which pertain to Petitioner's frustration with the grievance process. Accordingly, we construe this submission as a supplement to the Petition; any citations to exhibits are specifically noted. *See Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 310 n.1 (Pa. Cmwlth. 2019) (observing that courts reviewing preliminary objections may not only consider the facts pleaded in the petition for review, but also any documents or exhibits attached to it). DOC acknowledged this filing when it filed a preliminary objection to the extent that Petitioner challenges the grievance process.

[5] Petitioner references DOC policy "DC-ADM 803" regarding "Stationery, Pen, and Postage for Indigent Inmates." *See* Pet. at 3. This policy provides:

> Upon written request, an indigent inmate, as defined in the **Glossary of Terms**, shall be provided with stationery and a pen, and shall be able to anticipate the cost for postage to file papers necessary for the good faith pursuit of legal remedies.

3

DOC to advance postage without reimbursement for indigent inmates, the customary practice for non-indigent inmates—such as Petitioner, who temporarily lacked sufficient funds—is to allow their inmate accounts to be overdrawn (*i.e.*, "placed in the red") until adequate funds become available for reimbursement. According to Petitioner, this practice is critical to preserving his access to the courts. By refusing to process his legal mail due to insufficient funds, DOC has effectively imposed a blanket prohibition on all legal correspondence of all non-indigent inmates with low account balances, thereby violating Petitioner's constitutional right of access to the courts.

Additionally, Petitioner asserts that there is no policy prohibiting DOC from advancing postage fees on a non-indigent prisoner's legal mail and allowing reimbursement once a prisoner is able to pay the postage fee. Petitioner states that in over thirty years of incarceration, he has never previously had outgoing legal mail returned due to insufficient funds in his inmate account to cover postage. "In fact," Petitioner avers, "it is absolutely necessary that [DOC] employ this procedure in order to facilitate prisoners availing themselves of their constitutionally guaranteed right to access the courts." Pet. at 4. Further, Petitioner highlights how it is unrealistic to expect prisoners to "forever have money in their prison accounts, at the ready for postage on legal mail." *Id.* at 4-5.

Meanwhile, Petitioner also sought relief through the Department's internal grievance process. *See* Mem. of L., Ex. A. After receiving a final decision

---

Pa. Dep't of Corr., DC-ADM 803, Inmate Mail and Incoming Publications Procedures Manual § 1(L) (Oct. 29, 2015), available at https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf (last visited Oct. 24, 2025).

4

regarding his grievance, Petitioner filed a supplement to the Petition. *See* Mem. of L. Herein, Petitioner details his use of the DOC grievance process to raise the same concerns regarding the denial of postage advancement for non-indigent legal mail as set forth in his Petition. *See id.* Petitioner contends that prison officials "are giving an obstructive effect to a policy that is intended to [e]nsure that every prisoner has the means to avail [him or herself] of [his or her] constitutional right to seek, without impediment, a remedy to grievances." *See id.* at 4. Additionally, Petitioner challenges the handling of his grievance by certain DOC officials, asserting that the grievance was remanded for further consideration but never received a substantive response. *See id.* at 4-6. Petitioner maintains that the issues raised in his grievance and subsequent appeals were not fully addressed by DOC. *See id.* at 5-8. As further relief, Petitioner requests that this Court penalize a DOC official for "willfully flouting established DOC policy and corruptly attempting to cover up the wrongful conduct of fellow DOC officials." *See id.* at 9.

On July 10, 2024, this Court ordered DOC to file an answer or other responsive pleading to the Petition, and on August 9, 2024, DOC filed three preliminary objections. *See* Order, 7/10/24; DOC's Prelim. Objs., 8/9/24. Specifically, in DOC's view, Petitioner failed to state a First Amendment access to courts claim because the Petition contains only conclusory allegations and lacks sufficient factual detail. *See* DOC's Prelim. Objs. According to DOC, Petitioner does not identify the nature or subject of the legal mail at issue, the rights he was attempting to assert, whether his underlying legal claims were nonfrivolous, or how he suffered actual injury as a result. *See id.* at 3-5. Second, DOC asserts that to the extent Petitioner is appealing the result of a grievance he filed with DOC, this Court lacks jurisdiction over internal prison proceedings. *See id.* at 5. Third, DOC

5

contends that Petitioner's prayer for injunctive relief is barred by sovereign immunity, as sovereign immunity bars claims seeking mandatory injunctions to compel affirmative action by Commonwealth officials. *See id.* at 6.

Petitioner filed a response in opposition to the preliminary objections, titled "Petitioner's Preliminary Objections to Respondent's Preliminary Objections . . ." that both objects to DOC's assertion of sovereign immunity and responds to DOC's remaining preliminary objections. *See* Answer to Prelim. Objs., 9/18/24.[6] To the extent this filing contains additional facts not pleaded in the Petition, we will not consider such facts. *See Cardella v. Pub. Sch. Emps.' Ret. Bd.*, 827 A.2d 1277, 1282 (Pa. Cmwlth. 2003) ("[P]reliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings.").

Additionally, on July 12, 2024, Petitioner filed an application for summary relief, stating that his Petition and supplement to the Petition clearly establish his right to relief. *See* Appl. for Summ. Relief, 7/12/24. DOC responds to Petitioner's application for summary relief, stating that the application for summary relief is not ripe for review while DOC's preliminary objections are pending. *See* DOC's Answer, 8/19/24.

Then, on September 25, 2024, this Court directed DOC to file a brief in support of its preliminary objections and in opposition to summary relief by October 25, 2024, and directed Petitioner to file a brief in opposition to preliminary objections and in support of summary relief by November 25, 2024. *See* Order,

---

[6] DOC contends that this response to the preliminary objections is untimely and therefore does not address it. DOC's Br. at 9-10. However, this Court granted Petitioner's application to extend the deadline in which to file this pleading. *See* Order Granting Application for Extension of Time to File, 9/3/24, which gave Petitioner until September 23, 2024, to file his response to the preliminary objections. Petitioner filed his response on September 18, 2024. *See* Answer to Prelim. Objs. Therefore, it is timely.

6

9/25/24.  DOC timely filed its brief.  *See* DOC's Br., 10/25/24.  Petitioner did not file his brief until January 2, 2025.[7]  *See* Pet'r's Br., 1/2/25.

## II. DISCUSSION

### A. DOC's Preliminary Objections[8]

In support of its preliminary objections, DOC argues that we should dismiss the Petition for several reasons.  First, DOC contends that the First Amendment claim is not cognizable based on the facts Petitioner alleges.  *See* DOC's Prelim. Objs. at 3-5; DOC's Br. at 12-13.  Second, DOC asserts that this Court lacks original and appellate jurisdiction over internal prison proceedings such as the grievance process.  *See* DOC's Prelim. Objs. at 5; DOC's Br. at 14-15.  Lastly, DOC presents that it is immune under the doctrine of sovereign immunity.  *See* DOC's Prelim. Objs. at 6; DOC's Br. at 16-17.

### *1. Failure to State a Cognizable Claim*

DOC demurs, asserting that Petitioner has failed to state a cognizable First Amendment access to the courts claim.  *See* DOC's Prelim. Objs. at 3-4; DOC's Br. at 12-13.  Specifically, DOC argues that Petitioner has neither alleged nor demonstrated any actual injury resulting from the challenged conduct, nor has he shown that the underlying legal claims he seeks to pursue are nonfrivolous.  *See id.*

---

[7] Petitioner makes several additional factual assertions and claims not presented in his Petition. We will not consider any additional facts or claims not presented in the Petition.  *See Cardella*, 827 A.2d at 1282.

[8] When reviewing preliminary objections to petitions for review in our original jurisdiction, we "must treat as true all well-pleaded, material and relevant facts together with any reasonable inference[s] that can be drawn from those facts."  *Cnty. of Berks v. Pa. Off. of Open Recs.*, 204 A.3d 534, 539 n.7 (Pa. Cmwlth. 2019) (citations omitted).  We are not required to accept as true "conclusions of law, unwarranted inferences from facts, expressions of opinion or argumentative allegations."  *See id.*  "[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections."  *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.3d 413, 416 (Pa. Cmwlth. 2006).

7

Accordingly, DOC contends that the demurrer should be sustained, and the Petition dismissed in its entirety. *See id.*

In response, Petitioner argues that DOC's current mailroom practices will likely result in future harm, thereby satisfying the pleading threshold to withstand demurrer. *See* Pet'r's Br. at 6-7 (citing *Giles v. Tate*, 907 F.Supp. 1135 (S.D. Ohio 1995), for the proposition that anticipated harm stemming from denial of access may suffice where institutional practices are shown to be unreasonable). Petitioner outlines specific litigation costs and deadlines associated with his pending civil case, contending that without access to advance postage, his filing will be procedurally deficient and dismissed. *See* Pet'r's Br. at 7-10.

A "demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law[.]" *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020) (cleaned up). We sustain a demurrer only when the law undoubtedly precludes recovery; if doubt exists, we should overrule the demurrer. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 274 (Pa. 2005). "When ruling on a demurrer, a court must confine its analysis to the [petition for review]." *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). "Thus, the court may determine only whether, on the basis of the [petitioner's] allegations, he or she possesses a cause of action recognized at law." *Fraternal Ord. of Police Lodge No. 5 by McNesby v. City of Phila.*, 267 A.3d 531, 541 (Pa. Cmwlth. 2021).

"Where a trial court sustains preliminary objections on [their] merits, it is generally an abuse of discretion to dismiss a [petition for review] without leave to amend. If it is possible that the pleading can be cured by amendment, a court must give the pleader an opportunity to file an amended [petition for review]." *Jones v. City of Phila.*, 893 A.2d 837, 846 (Pa. Cmwlth. 2006) (cleaned up). Also, "we are

8

generally inclined to construe *pro se* materials liberally." *Robinson v. Schellenberg*, 729 A.2d 122, 124 (Pa. Cmwlth 1999).

The right of access to the courts is an express provision in the Pennsylvania Constitution,[9] and multiple provisions of the United States Constitution.[10] To state a cognizable claim for violation of the right of access to the courts, a prisoner must allege and offer proof that he suffered an "actual injury" to court access as a result of the denial. *Lewis v. Casey*, 518 U.S. 343 (1996) (limiting *Bounds v. Smith*, 430 U.S. 817, 822 (1977), holding that the right of access to the courts requires "States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts," and stating that inmate access to the courts should be "adequate, effective, and meaningful"); *see also Page v. Rogers*, 324 A.3d 661, 682 (Pa. Cmwlth. 2024); *Moss v. Pa. Dep't of Corr.*, 868 A.2d 615, 617-18 (Pa. Cmwlth. 2004); *Hackett v. Horn*, 751 A.2d 272, 275-76 (Pa. Cmwlth. 2000); *Bronson v. Horn*, 830 A.2d 1092, 1094-95 (Pa. Cmwlth. 2003), *affirmed*, 848 A.2d 917 (Pa. 2004), *cert. denied*, 543 U.S. 944 (2004) (DOC's policy of restricting the dollar amount on the costs it advances was permissible, noting that indigent inmates should prioritize their legal filings accordingly).

The United States Supreme Court has defined "actual injury" in the access to courts context as a hindrance to a prisoner's ability to bring a nonfrivolous legal claim concerning their conviction, sentence, or conditions of confinement. *See Lewis*, 518 U.S. at 351-55; *Page*, 324 A.3d at 682 (quoting *Moss*, 868 A.2d at 617-

---

[9] Pa. Const. art. I, § 11 ("All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.").

[10] *See Christopher v. Harbury*, 566 U.S. 403, 415 n.12 (2002) (discussing First Amendment's petition clause, U.S. Const. amend. I, and Fourteenth Amendment's equal protection and due process clauses, U.S. Const. amend. XIV, as sources of prisoners' right to access the courts).

18). This includes direct appeals from criminal convictions involving incarceration, habeas petitions, and civil rights actions under 42 U.S.C. § 1983 to "vindicate basic constitutional rights." *See Lewis*, 518 U.S. at 354; *Moss*, 868 A.2d at 618. Additionally, the *Lewis* Court stressed that inmates are not guaranteed "the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *See Lewis*, 518 U.S. at 355; *Moss*, 868 A.2d at 618. The Court clarified that the right of access to the courts does not obligate the state to assist prisoners in discovering potential grievances or to ensure effective litigation once in court, as such obligations would effectively amount to providing prisoners with ongoing legal representation, which the Constitution does not require. *See Lewis*, 518 U.S. at 354. Rather, the Court indicated, prison authorities are merely required to provide inmates with the tools they need "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 353; *Moss*, 868 A.2d at 618. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355.

In his Petition, Petitioner alleges that the mailroom supervisor at SCI-Somerset is "misapplying" DOC policy by refusing to advance postage for legal mail sent by inmates who are not indigent. *See* Pet. at 2-3. Petitioner contends that the relevant policy is intended to prevent non-indigent inmates from receiving free postage but does not prohibit the advancement of postage with the expectation of later reimbursement. *See id.* at 3-5. He argues that this misinterpretation imposes an unreasonable and impractical burden on inmates, many of whom lack a reliable income, by requiring them to maintain a sufficient balance at the exact time legal

10

mail must be sent. *See id.* Petitioner further asserts that this practice effectively denies prisoners meaningful access to the courts and violates constitutional protections, including equal protection, as Petitioner claims this restrictive "application" is not consistently applied across all Pennsylvania SCIs. *See id.*

While we acknowledge Petitioner's concerns, we find that his current pleadings do not satisfy the requirements of a First Amendment access to the courts claim. Petitioner does not allege the loss of a non-frivolous legal claim concerning his sentence or conditions of confinement as a result of the returned legal mail, which he vaguely describes as relating to a civil matter. *See id.* Petitioner has not pleaded sufficient facts regarding the substance of that legal claim. *See id.* The United States Supreme Court was clear in *Lewis*, 518 U.S. at 351, that prisoners are not guaranteed the tools to discover grievances or to litigate effectively once in court. Such expansions of the right of access to the courts were explicitly disclaimed by the Court as effectively demanding permanent counsel, which the Constitution does not require. *See id.*

Moreover, Petitioner seemingly recognizes that he has not pleaded an actual injury, as he asks this Court to adopt a prospective harm standard, arguing that he *will* suffer harm in the future if DOC is not compelled to advance postage to non-indigent inmates who temporarily lack sufficient funds. *See* Pet'r's Br. at 6-7. In support, Petitioner cites *Giles*, 907 F.Supp. 1135, which relies on *Bounds*, 430 U.S. at 817, and predates *Lewis*. Further, although Petitioner references DOC's alleged "policy" and "common practice" of denying postage advances to non-indigent inmates, he fails to cite any official written policy or present evidence substantiating the existence or uniform application of such practices across DOC. Instead, Petitioner relies on the inverse of the indigent-postage policy, suggesting

11

that non-indigent inmates who temporarily lack funds are thereby disadvantaged. *See* Pet. He asserts that it cannot lawfully be the intent of the indigent inmate postage policy "to give DOC carte blanche to refuse to send out the legal mail of every prisoner whose account has reflected a balance in excess of $10 within 30 days of the date when a prisoner attempts to send out legal mail but lacks sufficient funds to do so at that moment." *See* Pet. at 4. However, such speculative harm does not constitute an "actual injury" as required under the established precedent. *See Lewis*, 518 U.S. at 354-55; *Moss*, 868 A.2d at 617-18; *Hackett*, 751 A.2d at 272; *Bronson*, 830 A.2d 1092. Indeed, even if such a practice existed, Petitioner has failed to demonstrate that it resulted in any specific denial of access to the courts or prejudice to his legal claims.

That said, we recognize that Petitioner references additional factual allegations in his Answer to Preliminary Objections and his supporting Brief that, if properly pleaded, may cure the defects in his initial Petition.[11] Accordingly, while Petitioner has failed to state a claim upon which relief can presently be granted, we sustain DOC's demurrer without prejudice and grant Petitioner leave to file an amended petition for review that consolidates all relevant factual allegations and supporting arguments. *See Jones*, 893 A.2d at 846.

### 2. Lack of Jurisdiction

DOC additionally objects that, to the extent that Petitioner is challenging the result of his grievance or the grievance process itself, this Court lacks

---

[11] Petitioner states that the underlying civil action relates to prison disciplinary proceedings that could adversely impact his parole eligibility and notes that he must submit over 100 pages of legal documents, which imposes a financial burden. *See* Answer to Prelim. Objs. at 12-13; Pet'r's Br. at 7-10. Petitioner also challenges DOC's broader policy and "practice" of denying postage advancement for non-indigent prisoners' legal mail as unreasonable. *See* Answer to Prelim. Objs. at 7, 11-15; Pet'r's Br. at 16-17, 25.

both original and appellate jurisdiction over internal prison proceedings. *See* DOC's Prelim. Objs. at 5; DOC's Br. at 14-15. According to DOC, Petitioner's claims amount to an appeal of internal decisions that are not subject to judicial review, and therefore, the Petition should be dismissed for lack of jurisdiction. *See id.*

Petitioner responds, asserting that this Court has jurisdiction over his claims because they arise from a final decision by DOC and implicate constitutionally protected rights. *See* Pet'r's Br. at 18-21. He contends that DOC has misapplied relevant precedents, particularly *Bronson v. Cent. Off. Rev. Comm.*, 721 A.2d 357, 359 (Pa. 1998), and *Weaver v. Pa. Dep't of Corr.*, 829 A.2d 750, 751 (Pa. Cmwlth. 2003), arguing that those decisions involved non-final internal determinations or failed to implicate constitutional concerns, rendering them distinguishable. *See id.* Petitioner emphasizes that he fully exhausted administrative remedies before seeking judicial intervention and further relies on article V, section 9 of the Pennsylvania Constitution and 37 Pa.Code § 93.9(b), which states that inmates may pursue remedies in state and federal court.

It is well established, however, that "internal prison operations are more properly left to the legislative and executive branches," and that "prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference." *Bronson*, 721 A.3d at 358. Inmate grievance procedures are administrative mechanisms internal to DOC and are not the functional equivalent of adjudications by government agencies. *See id.* Accordingly, decisions stemming from those processes are generally not subject to judicial review, and "the full panoply" of protections afforded to litigants in judicial proceedings does not apply in the prison disciplinary context. *See Bronson*, 721 A.2d at 358-59; *Weaver*, 829 A.2d at 751.

While incarcerated individuals retain certain constitutional rights, those rights are significantly circumscribed by the fact of lawful imprisonment. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995) ("[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . ."); *Feliciano v. Dep't of Corr.*, 250 A.3d 1269, 1274 (Pa. Cmwlth. 2021) (*en banc*) (citation omitted), *aff'd*, 283 A.3d 196 (Pa. 2022). One such limitation applies to judicial review of prison grievance and misconduct decisions, which are considered internal matters generally outside the scope of this Court's appellate and original jurisdiction. *See Bronson*, 721 A.2d at 359; *Weaver*, 829 A.2d at 751; *Gentilquore v. Pa. Dep't of Corr.*, 326 A.3d 512, 516 (Pa. Cmwlth. 2024) (*en banc*); 42 Pa.C.S. §§ 761, 763(a)(1).

Nonetheless, a narrow class of prisoner claims invoking constitutionally protected liberty or property interests may fall within this Court's original jurisdiction. *See Williams v. Wetzel*, 232 A.3d 652, 653-54 (Pa. 2020); *Gentilquore*, 326 A.3d at 516. To qualify, the asserted right must not be subject to limitation by DOC policy and must be impacted by a final decision. *See Bronson*, 721 A.2d at 359; *Gentilquore*, 326 A.3d at 516; *Feliciano*, 250 A.3d at 1275. Additionally, due process protections may arise where a prison condition imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84.[12]

Here, although Petitioner acknowledges the controlling precedent, he fails to meaningfully distinguish *Bronson*, 721 A.2d 357, *Weaver*, 829 A.2d 750, or their progeny from the circumstances presented. His allegations, while framed in

---

[12] In *Sandin*, 515 U.S. at 487, the United States Supreme Court determined that a 30-day placement in disciplinary segregation did not constitute a significant disruption to the inmate's environment sufficient to trigger due process protections.

constitutional terms, center on DOC's interpretation of its internal policy and the outcome of its grievance process—matters which fall squarely within the DOC's discretionary authority and are not subject to judicial review, absent the involvement of a constitutionally protected, non-regulated interest affected by a final agency decision. Because Petitioner has not established that such an interest is at stake, this Court lacks original and appellate jurisdiction to entertain the claim. *See Bronson*, 721 A.2d at 359; *Gentilquore*, 326 A.3d at 516; *Weaver*, 829 A.2d at 751.

### 3. Sovereign Immunity

Lastly, DOC asserts that it is entitled to sovereign immunity from Petitioner's claim for injunctive relief, arguing that it is evident on the face of the Petition that the action is directed against a Commonwealth agency and no applicable exception to immunity has been pleaded. *See* DOC's Prelim. Objs. at 6; DOC's Br. at 16-17. Subsequently, Petitioner objects to DOC's assertion of sovereign immunity in its Answer to Preliminary Objections, stating that sovereign immunity should "be pleaded in a responsive pleading under the subheading 'New Matter.'" *See* Answer to Prelim. Objs. at 3.

It is well established that "sovereign immunity bars claims seeking mandatory injunctions to compel affirmative action by Commonwealth officials[.]" *Stackhouse v. Pa. State Police*, 892 A.2d 54, 61 (Pa. Cmwlth. 2006) (clarifying that sovereign immunity bars claims seeking mandatory injunctions to compel affirmative action by Commonwealth officials, but not those seeking prohibitory injunctions to restrain state action). As an affirmative defense, sovereign immunity must typically be raised in a "responsive pleading under the heading 'New Matter.'" Pa.R.Civ.P. 1030(a). Nevertheless, Pennsylvania courts have consistently permitted the defense to be raised by preliminary objection where it is clear from the face of

15

the pleading that the claim is asserted against a government entity and no exception applies. *See Mazur v. Cuthbert*, 186 A.3d 490, 498 (Pa. Cmwlth. 2018); *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014).

A party may object to the improper procedural posture of such a defense by filing preliminary objections in the nature of a motion to strike. *See McCreary v. City of Phila.*, 505 A.3d 385, 386 (Pa. Cmwlth. 1986) (holding that the trial court erred in sustaining a sovereign immunity preliminary objection where the appellant properly objected and the defense should have been raised in a new matter); *see also Swartz v. Masloff*, 437 A.2d 472, 474 (Pa. Cmwlth. 1981); *Com. ex rel. Milk Mktg. Bd. v. Sunnybrook Dairies, Inc.*, 379 A.2d 330 (Pa. Cmwlth. 1977). These cases imply that if the opposing party does object, courts may not consider the defense on preliminary objection. However, there are instances where this Court has declined to adhere to this rule "where no purpose would be served by a delay in ruling on the matter and it would expedite the disposition of the case." *Feldman v. Hoffman*, 107 A.3d 821, 832, 836 (Pa. Cmwlth. 2014) (finding no reversible error in sustaining a preliminary objection raising immunity despite a procedural objection, because the immunity defense was apparent on the face of the complaint and further proceedings would serve no purpose).

Here, Petitioner has objected to the improper procedural posture of raising sovereign immunity in a preliminary objection. *See* Answer to Prelim. Objs. at 3. We agree with Petitioner that DOC should have raised its assertion of sovereign immunity in a new matter. *See McCreary*, 505 A.3d at 386. Because it is unclear whether Petitioner has requested a mandatory or prohibitory injunction,[13] we

_____

[13] In his Petition, Petitioner requests that this Court "grant emergency injunctive relief in favor of Plaintiff and against [DOC], barring [DOC] from refusing to send out Plaintiff's legal mail due

16

overrule DOC's sovereign immunity preliminary objection at this time. *See Stackhouse*, 892 A.2d at 61; *McCreary*, 505 A.3d at 386.

### B. Petitioner's Application for Summary Relief

Applications for summary relief addressed to this Court's original jurisdiction are authorized under Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, which provides: "[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Summary relief is similar to summary judgment under the Pennsylvania Rules of Civil Procedure, in that the requested relief is only appropriate where there are no disputed issues of material fact and it is clear that the applicant is entitled to the requested relief under the law. *See Scarnati v. Wolf*, 173 A.3d 1110, 1118 (Pa. 2017). Also, we review the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of disputed material facts against the moving party. *See Marcellus Shale Coal v. Dep't of Env't Prot.*, 216 A.3d 448, 458 (Pa. Cmwlth. 2019).

Though Petitioner seeks summary relief against DOC, he is not entitled to do so at this juncture, because Petitioner's claims against DOC did not survive preliminary objections. Consequently, we dismiss Petitioner's application for summary relief as moot.

### III. CONCLUSION

In accordance with the foregoing analysis, we sustain DOC's preliminary objections in the nature of a demurrer and for lack of jurisdiction over

---

to insufficient funds at the time of mailing." Pet. at 6. However, in his supplement to the Petition, Petitioner requests that this Court "order prison mail room staff at SCI-Somerset to cease and desist from their practice of refusing to send out prisoners' legal mail due to insufficient funds for postage in their inmate accounts at the time of mailing." Mem. of L. at 9.

17

DOC's grievance process, overrule DOC's preliminary objection raising sovereign immunity, dismiss the petition for review without prejudice and grant Petitioner leave to file an amended petition for review within 30 days of the date of this decision and order, and dismiss Petitioner's application for summary relief as moot.


**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kirk J. Bard,                  :

        Petitioner       :

                       :   No. 201 M.D. 2024

        v.               :

                       :

Pennsylvania Department of   :

Corrections,              :

        Respondent    :

## **O R D E R**

AND NOW, this 24th day of October, 2025, we OVERRULE the preliminary objection asserting sovereign immunity filed by the Pennsylvania Department of Corrections (DOC), SUSTAIN the remaining preliminary objections filed by DOC, DISMISS the petition for review without prejudice, GRANT Kirk J. Bard leave to file an amended petition for review within 30 days of the date of this decision and order, and DISMISS Petitioner's application for summary relief as moot.

**LORI A. DUMAS, Judge**